**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| HAJUR EL-HAGGAN, *et al.*,      ) | |
|                        ) | |
|      Plaintiffs,        ) | |
|                        ) | Civil Action No. 24-cv-00442-LKG |
| v.                      ) | |
|                        ) | Dated:  July 16, 2025 |
| BOARD OF EDUCATION FOR      ) | |
| MONTGOMERY COUNTY, *et al.*,    ) | |
|                        ) | |
|      Defendants.       ) | |
| | |

<u>**MEMORANDUM OPINION**</u>

## I.    INTRODUCTION

In this civil action, the Plaintiffs, Hajur El-Haggan, Anike Robinson and Angela Wolf, bring First Amendment retaliation and federal and state employment discrimination claims against the Defendants, the Board of Education for Montgomery County (the "MCBOE"), Superintendent Thomas W. Taylor, Acting Superintendent and Former Chief Operating Officer Brian Hull, Associate Superintendent Peter Moran, Chief of Human Resources and Development April L. Key, Acting Director of Compliance and Investigations Stacey T. Ormsby, Director II of Office of School Support and Well-Being Sean McGee, Director of Office of School Support and Well-Being David T. Chia, Director of Student Welfare and Compliance Unit Gregory S. Edmundson, the Principal of Westland Middle School Alison Serino, and the Principal of the Takoma Park Middle School Erin Martin, arising from the Plaintiffs' suspension and transfer to new teaching positions within the Montgomery County Public School System (the "MCPS"), after they expressed opinions about the October 7, 2023, terrorist attacks in Israel and the subsequent war in Gaza. *See generally* ECF No. 42.  The Defendants have moved to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 45 at 1.  The motion is fully briefed.  ECF Nos. 45, 46 and 47.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendants' motion to dismiss (ECF No. 45); and (2) **DISMISSES** the Plaintiffs' First Amendment retaliation claims, based upon Plaintiff El-Haggan's wearing of pro-Palestinian

clothing, buttons and pins in the classroom, set forth in Count I of the amended complaint; (3) **DISMISSES** the Plaintiffs' First Amendment retaliation claims against the MCBOE; and (4) **DISMISSES** the Plaintiffs' employment discrimination claims set forth in Counts II, III, IV and V of the amended complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

In this civil action, the Plaintiffs bring First Amendment retaliation and federal and state employment discrimination claims against the Defendants arising from their suspension and transfer to new teaching positions within the MCPS, after they expressed opinions about the October 7, 2023, terrorist attacks in Israel and the subsequent the war in Gaza. *See generally* ECF No. 42. The Plaintiffs allege the following five claims in the amended complaint: (1) First Amendment viewpoint discrimination against all Defendants (Count I); (2) disparate treatment discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1), brought by Plaintiff El Haggan against the MCBOE; (3) disparate treatment discrimination under Section 20-602 of the Annotated Code of Maryland, Md. Code Ann., State Gov't § 20-602 (West 2024), brought by Plaintiff El-Haggan against the MCBOE (Count III); (4) disparate treatment discrimination under Title VII, 42 U.S.C. § 2000e-2(a)(1), brought by Plaintiff Robinson against the MCBOE; and (5) disparate treatment discrimination under Section 20-602 of the Annotated Code of Maryland, Md. Code Ann., State Gov't § 20-602 (West 2024), brought by Plaintiff Robinson against the MCBOE (Count V). ECF No. 42. As relief, the Plaintiffs seek certain declaratory and injunctive relief and to recover monetary damages, attorneys' fees and costs from the Defendants. *Id*. at Prayer or Relief.

<u>The Parties</u>

Plaintiff Hajur El-Haggan is a teacher employed by the MCPS. *Id*. at ¶ 12.

Plaintiff Anike Robinson is a teacher employed by the MCPS. *Id*.

Plaintiff Angela Wolf is a teacher employed by the MCPS. *Id*.

Defendant Board of Education of Montgomery County controls, supervises and manages the MCPS. *Id*. at ¶ 13.

---

[1] The facts recited in this memorandum opinion are taken from the amended complaint; the Defendants' motion to dismiss; and the memorandum in support thereof. ECF Nos. 42 and 45. Unless otherwise stated, the facts recited herein are undisputed.

Defendant Thomas W. Taylor is the Superintendent of the MCPS. *Id.* at ¶ 14.

Defendant Brian Hull was the Acting Superintendent of MCPS at all times relevant to the complaint. *Id.* at ¶ 15.

Defendant Peter Moran is the Associate Superintendent of the MCPS. *Id.* at ¶ 16.

Defendant April L. Key is the Chief of Human Resources and Development for the MCPS. *Id.* at ¶ 17.

Defendant Stacey Ormsby is the Acting Director of Compliance and Investigations for the MCPS. *Id.* at ¶ 18.

Defendant Sean P. McGee is the Director of the Office of School Support and Well-Being for the MCPS. *Id.* at ¶ 19.

Defendant David T. Chia is the Director of the Office of School Support and Well-Being for the MCPS. *Id.* at ¶ 20.

Defendant Gregory S. Edmundson is the Director of the Student Welfare and Compliance Unit for the MCPS. *Id.* at ¶ 21.

Defendant Alison Serino is the Principal of Westland Middle School. *Id.* at ¶ 22.

Defendant Erin Martin is the Principal of Takoma Park Middle School. *Id.* at ¶ 23.

<u>Background</u>

As background, the Plaintiffs are public school teachers employed by the MCPS. ECF No. 42 at ¶ 12. Following the events of October 7, 2023, the Plaintiffs individually expressed their opposition to Israel's response to the terrorist attacks and to the subsequent war in Gaza. *Id.* at ¶¶ 43, 108 and 172.

<u>Plaintiff El-Haggan</u>

Plaintiff Hajur El-Haggan is a Black, Arab, Muslim individual who taught sixth and seventh grade math at Argyle Middle School in Montgomery County, Maryland. *Id.* at ¶¶ 33 and 35. Plaintiff El-Haggan has worked for the MCPS since 2015. *Id.* at ¶ 35.

On October 13, 2023, Plaintiff El-Haggan began wearing clothing with the phrases, "Free Palestine" and "Free Gaza," to work and Plaintiff El-Haggan also wore homemade pins and buttons that illustrated her support for Palestine within the workplace. *Id.* at ¶¶ 43-44. Plaintiff El-Haggan also demonstrated her support for Palestine by adding, "From the river to the sea, Palestine will be free," to her staff email signature, which she used to communicate internally with MCPS staff. *Id.* at ¶¶ 48 and 50.

The Plaintiffs allege that, on November 15, 2023, an MCPS employee became upset and no longer felt comfortable training Plaintiff El-Haggan, after the employee read her email signature. *Id.* at ¶¶ 53 and 63. The Plaintiffs also allege that Plaintiff El-Haggan was the target of a hate-incident on school property, because of her views. *Id.* at ¶ 54.

On November 20, 2023, the Principal of Argyle Middle School, James Allrich, informed Plaintiff El-Haggan that she would be placed on administrative leave, because of her email signature. *Id.* at ¶ 58. Plaintiff El-Haggan alleges that Defendants Stacey Ormsby and April Key made the decision to suspend her from her position with the MCPS. *Id.* at ¶ 59. Following the suspension, the MCPS investigated Plaintiff El-Haggan. *Id.* at ¶ 62.

According to the MCPS's investigative report, a MCPS employee sent a screenshot of Plaintiff El-Haggan's email signature to her supervisor on November 18, 2023, and later complained about the email signature to the Argyle Middle School Assistant Principal. *Id.* at ¶¶ 55 and 57. The school's Principal also received another complaint from a parent about Plaintiff El-Haggan's "Free Palestine" pins, stickers, buttons and headscarf with the slogan "From the River to the Sea." *Id.* at ¶ 61. And so, the investigative report found that Plaintiff El-Haggan violated the MCPS Employee Code of Conduct, MCPS Best Practices for Email and MCPS Regulation KEA-RA, by wearing clothing and using an email signature line that promoted genocide. *Id.* at ¶ 74.

On February 21, 2024, the MCPS notified Plaintiff El-Haggan that she would be transferred to a new school. *Id.* at ¶ 82. The Plaintiffs allege that the MCPS offered Plaintiff El-Haggan the option to accept one of the following three positions: (1) Algebra I teacher at Seneca Valley High School; (2) Special Education teacher at Julius West Middle School; or (3) Grade 4 English Language Arts teacher at Harmony Hills Elementary School. *Id.* at ¶ 84. But, the Plaintiffs allege that these positions were not comparable to Plaintiff El-Haggan's position at Argyle Middle School. *Id.* at ¶ 85. And so, Plaintiff El-Haggan was ultimately reassigned to Greencastle Middle School. *Id.* at ¶ 89.

The Plaintiffs further allege that this transfer to a new school caused Plaintiff El-Haggan stress and lost income, because she was unable to continue her private tutoring sessions. *Id.* at ¶ 98. The Plaintiffs further allege that, since Plaintiff El-Haggan's transfer, the MCPS has denied her job applications that she submitted for Math Teacher positions at Baker Middle School, Rosa Parks Middle School, Parkland Middle School, Rocky Hills Middle School, and MLK Middle

School, as well as a teaching position with the Outdoor Environmental Education Program at Lathrop E. Smith Center. *Id.* at ¶ 99. And so, the Plaintiffs contend that, "by singling out Ms. El-Haggan, an Arab Muslim woman, for her email signature and placing her on leave and transferring her to another school, MCPS, MCBOE, and all involved administrators have violated Title VII of the Civil Rights Act, Maryland state law, and engaged in viewpoint discrimination in violation of the First Amendment." *Id.* at ¶ 101.

Plaintiff Anike Robinson

Plaintiff Anike Robinson has been a teacher for 25 years and she has taught at Westland Middle School since July 1, 2021. *Id.* at ¶¶ 102 and 104. Plaintiff Robinson has posted about Palestine on her Facebook, Instagram and TikTok accounts. *Id.* at ¶ 109.

Specifically, on November 2, 2023, Plaintiff Robinson posted on Instagram an image of a red eye with a map of Palestine with the caption, "The world is watching, Palestine will be free" and "colonized people across the world stand in solidarity with the Palestinian people . . . from the river to the sea, [P]alestine will be free. [D]ecolonization is not a metaphor." *Id.* at ¶¶ 111-112. On November 26, 2023, a parent of a Westland Middle School student reported Plaintiff Robinson's Instagram posts to the Westland Middle School's Assistant Principal and Principal Alison Serino. *Id.* at ¶ 111. On November 27, 2023, the parent sent the school a photograph that Plaintiff Robinson had shared on Instagram illustrating an Israeli government missile on the verge of killing a Palestinian child. *Id.* at ¶ 113.

On November 27, 2023, Principal Serino spoke with Plaintiff Robinson about this complaint. *Id.* at ¶ 115. On December 1, 2023, a group of parents also complained about Plaintiff Robinson's social media posts. *Id.* at ¶ 119. On December 4, 2023, Principal Serrino and the school's Assistant Principals met with Plaintiff Robinson and provided a 24-hour suspension notice. *Id.* at ¶ 123. Plaintiff Robinson was suspended indefinitely on the next day. *Id.*

Thereafter, the MCPS conducted an investigation of Plaintiff Robinson's social media posts. *Id.* at ¶ 131. On January 5, 2024, Plaintiff Robinson attended a meeting where she was questioned about her social media posts and asked specifically about her post of a missile with the Star of David. *Id.* at ¶¶ 139-144. A *Loudermill* hearing was noticed on January 25, 2024, and a preponderance of evidence found that Plaintiff Robinson violated several MCPS policies, including the MCPS Employee Code of Conduct and MCPS Social Media Best Practices for

Employees. *Id.* at ¶ 149. And so, on March 18, 2024, MCPS Interim Superintendent recommended to the MCBOE that Plaintiff Robinson receive a five-duty day suspension without pay. *Id.* at ¶¶ 152-153 and 156. The suspension was not, however, imposed. *See id.* at ¶¶ 152 and 159.

The MCPS also transferred Plaintiff Robinson to Hallie Wells Middle School to teach seventh and eighth grade English. *Id.* at ¶ 159. The Plaintiffs allege that this transfer created numerous challenges for Plaintiff Robinson, including an increase in commute time, pressure to take a full-time position, loss in career advancement and an increase of stress and anxiety leading to a panic attack. *Id.* at ¶¶ 160-164.

Plaintiff Angela Wolf

Plaintiff Angela Wolf has been an educator for approximately 30 years and she taught at Takoma Park Middle School. *Id.* at ¶ 168. On November 30, 2023, several of Plaintiff Wolf's Facebook posts were reported by a parent to the school's Resource Counselor, Pamela Lever. *Id.* at ¶ 173. Ms. Lever then met with the Principal of Takoma Park Middle School, Erin Martin and Assistant Principal Aaron Williams, to notify them of the report. *Id.* at ¶ 175. Principal Martin also received emails from parents about Plaintiff Wolf's social media posts and she brought these concerns to the Director of the Student Welfare and Compliance Unit, Gregory Edmundson, and the Associate Superintendent of MCPS, Peter Moran. *Id.* at ¶¶ 176-177. And so, on December 1, 2023, Defendant Erin Martin placed Plaintiff Wolf on administrative leave. *Id.*

In January 2024, the MCPS also investigated Plaintiff Wolf's social media posts. *Id.* at ¶ 191. On January 26, 2024, Plaintiff Wolf received a notice for a *Loudermill* hearing. *Id.* at ¶ 201. Following the hearing, on or around February 2, 2024, Plaintiff Wolf received a report accusing her of violating the MCPS Employee Code of Conduct and the MCPS Social Media Best Practices for Employees. *Id.* at ¶ 203. Thereafter, Plaintiff Wolf was transferred to Seneca Valley High School, where she taught math, art and English. *Id.* at ¶¶ 205-207. In the fall of 2024, Plaintiff Wolf began teaching special education at Sligo Middle School. *Id.* at ¶ 209.

The Plaintiffs' EEO Complaints

It is undisputed that Plaintiffs Hajur El-Haggan and Anike Robinson timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") and the Maryland Commission on Civil Rights ("MCCR") regarding their suspensions, investigations and transfers. ECF No. 42 at ¶ 29; ECF No. 45. Plaintiff El-Haggan received a

6

Notice of Right to Sue letter less than 90 days from the date of filing of the original complaint. ECF No. 42 at ¶ 30.

The Plaintiffs' Allegations

The Plaintiffs allege that they suffered First Amendment violations as a result of "a broad, unofficial policy that discriminates against Palestinian speech and was instituted by all Defendants." *Id.* at ¶ 223. In this regard, the Plaintiffs allege that the Defendants violated the First Amendment by enforcing the MCPS's Employee Code of Conduct and Social Media Best Practices policy and Best Practices for Email policy, and by investigating, suspending and transferring them to other schools. *Id.* at ¶¶ 224-225. The Plaintiffs also allege that the Defendants knowingly violated clearly established law, by disciplining them for their speech. *Id.* at ¶¶ 226-228.

In addition, the Plaintiffs allege that the Defendants violated Title VII and the MFEPA, by treating them differently than similarly situated MCPS employees who are not members of their protected classes, in deciding to investigate, suspend and transfer the Plaintiffs. *Id.* at ¶¶ 233-238 and 246-250. In this regard, the Plaintiffs allege that several MCPS teachers who do not share their background posted similar content in their email signature blocks and filmed and posted students on their personal social media accounts, without being investigated, suspended or transferred by the MCPS. *Id.* at ¶¶ 236-237 and 247-249.

Lastly, the Plaintiffs allege that their suspension, investigation and, subsequent, transfer to other school constitute adverse employment actions that are actionable under Title VII and the MFEPA. *Id.* at ¶¶ 239-242 and 251-253. And so, the Plaintiffs request that the Court, among other things: (1) declare that the Defendants violated the First Amendment by enforcing the MCPS's policies against them; (2) declare that the Defendants violated Title VII and the MFEPA by enforcing these policies; (3) enjoin the Defendants from enforcing these policies on the basis of subject matter and viewpoint; and (4) award them monetary damages, attorneys' fees and costs. *Id.* at Prayer or Relief.

> **B.    Procedural Background**

The Plaintiffs commenced this matter on February 14, 2024, and they amended the complaint on August 1, 2024. ECF Nos. 1 and 42. On August 30, 2024, the Defendants filed a motion to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 45.

On September 30, 2024, the Plaintiffs filed a response in opposition to the Defendants' motion. ECF No. 46. On October 15, 2024, the Defendants filed a reply brief. ECF No. 47.

The Defendants' motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.  Fed. R. Civ. P. 8(a) And 12(b)(6)

Under Fed. R. Civ. P. 8(a), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing Twombly*, 550 U.S. at 556).

When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty*., 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Inc.*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

### B.  First Amendment Claims

The Free Speech Clause of the First Amendment provides that "Congress shall make no law. . . abridging the freedom of speech." U.S. Const. amend. I. In this regard, the Supreme Court held "that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). And so, on claims pertaining to the State acting as an employer regulating speech of an

8

employee, the Court applies "a three-prong test to determine if the employee's rights under the First Amendment were violated." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017) (citing *McVey v Stacy*, 157 F.3d 271, 277 (4th Cir. 1998)).

Courts balance the separate interests of the employee and employer by first analyzing whether "the speech at issue was that of a private citizen speaking on a matter of public concern." *Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 694 (4th Cir. 2007) (quoting *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000)). To determine if the employee was speaking as private citizen, the Court looks at "whether the speech was made as a citizen or pursuant to the employee's duties." *Crouse*, 848 F.3d at 583 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). As for speaking on matter of public concern, the Court looks at whether the employee was speaking on a matter of interest to the community. *Connick v. Myers*, 461 U.S 138, 149 (1983).

The Court next examines whether the employee's interest outweighs the government's interest "in what the employer has determined to be the appropriate operation of the workplace." *Urofsky*, 216 F.3d at 406. To do so, the Court considers context, the employee's role and the extent the speech impairs efficiency of the workplace. *Grutzmacher v. Howard County*, 851 F.3d 332, 345 (4th Cir. 2017). The factors the Court considers are as follows:

> Whether a public employee's speech (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the institution; (6) undermined the mission of the institution; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the institution; and (9) abused the authority and public accountability that the employee's role entailed.

*Grutzmacher*, 851 F.3d at 345 (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 317 (4th Cir. 2006)). And so, whether the employee's interest outweighs the government's interest is a question of law for the Court to determine. *Id.* at 344-45. Lastly, if the Court finds the employee was speaking as a private citizen on a matter of public concern and their interest outweighed the employer's, the Court must determine whether "the employee's speech caused the disciplinary action." *Crouse*, 848 F.3d at 583.

### C. Qualified Immunity

The Supreme Court has explained that the "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). And so, it is well-established that "[t]he doctrine of qualified immunity protects . . . public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'" *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012) (citation omitted). In this regard, the United States Court of Appeals for the Fourth Circuit has held that the Court should apply a two-step test when determining whether a defendant is entitled to qualified immunity. *See Wilson v. Prince George's Cnty.*, 893 F.3d 213, 219 (4th Cir. 2018); *see also Pearson*, 555 U.S. at 232. First, the Court inquires whether "the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the [defendant's] conduct violated the plaintiff's constitutional right." *Wilson*, 893 F.3d at 219 (citation omitted). Second, the Court must determine whether "the right at issue was 'clearly established' at the time of [defendant's] conduct." *Id.* (citation omitted).

### D. Disparate Treatment Claims

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin. *See* 42 U.S.C. § 2000e–2.[2] Title VII requires that a plaintiff file a charge of discrimination with the EEOC before filing suit in this Court. 42 U.S.C. § 2000e-5(f)(1) (permitting civil suit by the "person claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also Puryear v. County of Roanoke*, 214

---

[2] The Plaintiff also alleges that MCBOE violated the Maryland Fair Employment Practices Act ("MFEPA"). *See* Md. Code State Gov't § 20-606(a)(1)(i). The MFEPA "is the state law analogue of Title VII." *Alexander v. Marriott Int'l, Inc*., No. 09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011). Under the MFEPA, "a complainant may bring a civil action . . . alleging an unlawful employment practice, if: (1) the complainant initially filed a timely administrative charge . . .; (2) at least 180 days have elapsed since the filing . . .; and (3) the civil action is filed within 2 years after the alleged unlawful employment practice occurred." Md. Code State Gov't. § 20-1013(a). And so, the MFEPA requires that a plaintiff file an employment discrimination action within two years of an alleged unlawful employment practice, provided that plaintiff's administrative charge was timely under federal or local law. *See id.* When a plaintiff has not asserted a distinction between federal and Maryland discrimination claims, the Court may apply the same standards to the analysis of the state and federal discrimination claims. *See Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 444 (D. Md. 2012).

10

F.3d 514, 518 (4th Cir. 2000) ("[T]he aggrieved person may initiate a civil action based on the Title VII claims made in her EEOC charge only after receipt of a right-to-sue letter."); *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491.

Title VII also requires that an aggrieved party file a charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred" or within 300 days if the aggrieved person presented the claim to a state or local agency. 42 U.S.C. § 2000e–5(e)(1). If a plaintiff "fails to file an administrative charge with the EEOC within one hundred eighty . . . or three hundred . . . days . . . then the EEOC charge is not considered timely filed." *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014) (citing 42 U.S.C. § 2000e–5(e)(1)).

The Fourth Circuit has recognized that the exhaustion requirement under Title VII "is not simply a formality to be rushed through so that an individual can quickly file [a] subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, this requirement "reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). The Supreme Court has also held that Title VII's charge-filing requirement "is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend County v. Davis*, 587 U.S. 541, 551 (2019). And so, the Court cannot consider matters that were not properly raised during the EEOC process, even when a plaintiff has filed a timely claim with the EEOC. *See, e.g.*, *Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996))); *Miles*, 429 F.3d at 491.[3]

---

[3] To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look only to the charge filed with that agency." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the

There are two methods for proving intentional discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue."  *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-07 (4th Cir. 1999) (quoting *Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992)).

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.  To state a *prima facie* case of disparate treatment discrimination under Title VII, a plaintiff must allege facts to show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom.*, 566 U.S. 30 (2012).  To constitute an adverse employment action, the employment action must "adversely affect[] the terms, conditions, or benefits of the plaintiff's employment."  *Holland v. Wash. Homes*, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)).  Given this, the Fourth Circuit has held that an assignment or action which is merely "less appealing to the employee" does not meet the threshold for an adverse employment action.  *Id.* (citation omitted).  Lastly, to show that other employees are similarly situated to the plaintiff, a plaintiff must allege facts to show that the comparators are similar in all material respects, including reporting to the same supervisor, subject to the same standards, and engaged in the same conduct.  *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

If a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142

---

administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) ("This charge frames the scope of future litigation.").

(2000) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case.  *See Stokes v. Westinghouse Savannah River Co*., 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10).  Given this, the plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.  And so, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans*, 80 F.3d at 959 (citing *Burdine*, 450 U.S. at 253).

### E.  Sovereign Immunity

Lastly, the Eleventh Amendment of the United States Constitution bars a suit in federal court against a State, one of its agencies or departments, or one of its officials acting in an official capacity, without a valid abrogation or waiver of the State's sovereign immunity.  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 144-45 (1993); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Pennhurst State Sch. & Hosp. v. Haldeman*, 465 U.S. 89, 100 (1984); *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001); *see also* U.S. Const. amend. XI; Md. Const., art IV, § 1.  "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 99 (emphasis in original).  Relevant here, sovereign immunity extends to state agents and state instrumentalities when the agency or instrumentality is an arm of the State.  *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997).  To determine if a state agent or instrumentality is an arm of the State, courts examine "[t]he nature of the entity and its relationship with the state." *Lewis v. Bd. of Educ. of Talbot Cnty.*, 262 F. Supp. 2d 608, 612 (D. Md. 2003).  And so, the Court considers "whether a judgment against the government entity would be paid from the state's treasury," *id.*, and "(1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys; (2) the scope of the entity's concerns—whether local or statewide—with which the entity is involved; and (3) the manner in which State law treats the entity." *Cash v. Granville Cnty. Bd. of Educ.,* 242 F.3d 219, 224 (4th Cir.2001).

### IV.  ANALYSIS

The Defendants have moved to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), upon several grounds: First, the Defendants argue that the Plaintiffs' Section

1983/First Amendment retaliation claims are not plausible under *Pickering*, because: (1) the amended complaint shows that Plaintiff El-Haggan engaged in speech as a classroom teacher, rather than as a citizen; (2) Plaintiff El-Haggan's speech also fails the *Pickering* balancing test; (3) the Defendants are entitled to qualified immunity; (4) Plaintiff El-Haggan cannot allege a clearly established First Amendment right to defeat qualified immunity; and (5) Plaintiffs Robinson and Wolf can neither overcome *Pickering*'s balancing test, nor demonstrate a clearly established constitutional right.  ECF No. 45 at 19-27.  Second, the Defendants argue that the Plaintiffs' Section 1983/First Amendment retaliation claims are also not plausible, because the Plaintiffs fail to allege a constitutional injury in the amended complaint.  *Id.* at 27.  Third, the Defendants argue that the Court should also dismiss the Plaintiffs' Section 1983/First Amendment claim against the MCBOE, because it is immune from suits brought under Section 1983.  *Id.*

Fourth, the Defendants argue that the Plaintiffs fail to state a cognizable claim for an injunction for violating the Constitution.  *Id.* at 28.  Lastly, the Defendants argue that Plaintiffs El-Haggan and Robinson fail to state plausible employment discrimination claims under Title VII and the MFEPA, because they fail to allege facts to show an adverse employment action and to identify requisite comparators.  *Id.* at 29-36.  And so, the Defendants request that the Court dismiss the amended complaint.  *Id.* at 36.

The Plaintiffs counter in their response in opposition to the Defendants' motion that the Court should not dismiss this matter, because: (1) they engaged in First Amendment-protected speech as private citizens on matters of public concern; (2) their interest in free speech outweigh the Defendants' interest in regulating that speech; and (3) the Defendants committed viewpoint discrimination.  ECF No. 46 at 7-20.  The Plaintiffs also argue that they state plausible employment discrimination claims in the amended complaint, because they have alleged facts to show an adverse employment action and to plead a disparate treatment claim.  *Id.* at 20-24. Lastly, the Plaintiffs argue that the MCBOE is not entitled to sovereign immunity from their Section 1983 claims and that the Defendants are not entitled to qualified immunity.  *Id.* at 24-30. And so, the Plaintiffs request that the Court deny the Defendants' motion to dismiss.  *Id.* at 30.

For the reasons that follow, a careful reading of the amended complaint shows that the Plaintiffs' Section 1983/First Amendment retaliation claim, based upon Plaintiff El-Haggan's wearing of pins, buttons and clothing in the classroom, is not plausible.  But the amended

14

complaint also makes clear that Plaintiff El-Haggan alleges a plausible First Amendment retaliation claim based upon her email signature and that Plaintiffs Robinson and Wolf also allege plausible First Amendment retaliation claims based upon their social media posts. The Defendants also persuasively argue that the MCBOE is immune from suit with regards to the Plaintiffs' Section 1983/First Amendment claims.

In addition, a careful reading of the amended complaint shows that the Plaintiffs fail to state plausible disparate treatment claims under Title VII and the MFEPA, because they do not allege facts to show an adverse employment action. Lastly, the Court is satisfied that the Plaintiffs allege plausible claims for injunctive relief at this early stage of the proceedings. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART the Defendants' motion to dismiss; (2) DISMISSES the Plaintiffs' Section 1983/First Amendment retaliation claim, based upon Plaintiff El-Haggan's wearing of pins, buttons and clothing in the classroom, set forth in Count I of the amended complaint; (3) DISMISSES the Plaintiffs' Section 1983/First Amendment retaliation claims against the MCBOE; and (4) DISMISSES the Plaintiffs' employment discrimination claims set forth in Counts II, III, IV and V of the amended complaint.

### A. The Plaintiffs State Plausible First Amendment Claims Based Upon Plaintiff El-Haggan's Email Signature And The Plaintiffs' Social Media Posts

As an initial matter, a careful reading of the amended complaint shows that Plaintiff El-Haggan's First Amendment retaliation claim, based upon the wearing of pro-Palestinian pins, buttons and clothing in the classroom, is not plausible. It is undisputed in this case that Plaintiff El-Haggan is a MCPS school teacher. ECF No. 42 at ¶ 35; ECF No. 45 at 2. Given this, Plaintiff El-Haggan is a public employee and the Court must balance her interest "as a citizen, in commenting upon matters of public concern," against the interest of the MCPS in "promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568.

To do so, the Court balances the separate interests of the employee and employer by first analyzing whether "the speech at issue was that of a private citizen speaking on a matter of public concern." *Lee*, 484 F.3d at 694 (quoting *Urofsky*, 216 F.3d at 406). To determine if Plaintiff El-Haggan was speaking as a private citizen in this case, the Court looks at "whether the speech was made as a citizen or pursuant to [her] duties." *Crouse*, 848 F.3d at 583 (internal citation omitted). To determine whether Plaintiff El-Haggan was speaking on matter of public concern, the Court also considers whether she was speaking on a matter of interest to the community. *Connick*, 461 U.S at 149.

The Court next considers whether Plaintiff El-Haggan's interest in the subject speech outweighs the MCPS's interest "in what the employer has determined to be the appropriate operation of the workplace." *Urofsky*, 216 F.3d at 406.  And so, the Court considers several factors, including:

> Whether a public employee's speech (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the institution; (6) undermined the mission of the institution; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the institution; and (9) abused the authority and public accountability that the employee's role entailed.

*Grutzmacher*, 851 F.3d at 345 (quoting *Ridpath*, 447 F.3d at 317).  If the Court determines that Plaintiff El-Haggan was speaking as a private citizen on a matter of public concern, and her interest outweighs the MCPS's interest, the Court next must determine as a final matter whether "the employee's speech caused the disciplinary action." *Crouse*, 848 F.3d at 583.

In this case, the amended complaint makes clear that Plaintiff El-Haggan was not speaking as a private citizen when she wore pro-Palestinian pins, buttons and other clothing in her classroom.  The amended complaint makes clear that Plaintiff El-Haggan engaged in this speech within her classroom, by wearing homemade pins, buttons and outfits containing the slogan, "Free Palestine."  ECF No. 42 at ¶ 44.  The amended complaint also shows that Plaintiff El-Haggan engaged in this speech by distributing "Free Palestine" buttons to other teachers at her school.  *Id.* at ¶ 47.  Given these facts, the Court agrees with the Defendants that Plaintiff El-Haggan's speech was curricular in nature, because, her students and their parents were likely to regard such speech in the classroom as approved and supported by the school. *See Lee*, 484 F.3d at 698 ("As a general proposition, students and parents are likely to regard a teacher's in-class speech as approved and supported by the school, as compared to a teacher's out-of-class statements."); *see also Boring v. Buncombe Cnty. Bd. of Educ.*, 136 F.3d 364, 368-69 (4th Cir. 1998) (reasoning that if contested speech is curricular, it is not speech on a matter of public concern).

Notably, the amended complaint makes clear that Plaintiff El-Haggan's speech, while unrelated to mathematics, was, nonetheless, designed to impart knowledge to the students about the war in Gaza.  ECF No. 42 at ¶¶ 44-45 (acknowledging that Plaintiff El-Haggan wore the pins

and clothing to express her opinion and views about maters of social concern).  Because the factual allegations in the amended complaint, taken as true, show that Plaintiff El-Haggan presented her views regarding the war in Gaza in a compulsory classroom setting, she was not speaking as a private citizen, but rather as an employee of the MCPS.

Given this, the Plaintiffs do not state a plausible First Amendment retaliation claim based upon this conduct.  *Pickering*, 391 U.S. at 568.  And so, the Court GRANTS the Defendants' motion to dismiss the Plaintiffs' First Amendment retaliation claim based upon Plaintiff El-Haggan's wearing of pins, buttons and clothing in the classroom.

While a close question, the Court is, however, satisfied that the Plaintiffs state a plausible First Amendment retaliation claim based upon Plaintiff El-Haggan's email signature containing the slogan, "From the River to the Sea, Palestine will be free."  The amended complaint alleges facts to show that the subject-matter related to this slogan, the war in Gaza, constitutes speech on a matter of public concern.  *Id.* at ¶ 49.

The amended complaint also plausibly alleges that Plaintiff El-Haggan engaged in this speech as a private citizen.  In this regard, the Plaintiffs allege in the amended complaint that Plaintiff El-Haggan added this slogan to her work email signature shortly after the October 7, 2023, terrorist attacks.  *Id.* at ¶ 48.  The Plaintiffs also allege that Plaintiff El-Haggan did not use this email to communicate with students or their parents.  *Id*. at ¶ 50.  Given this, the amended complaint plausibly alleges that Plaintiff El-Haggan's students and their parents would not have regarded her email signature as being supported by the school.  And so, the Plaintiffs plausibly allege facts to show that Plaintiff El-Haggan was speaking in this context as a private citizen, on a matter of public concern.  *Pickering*, 391 U.S. at 568.

The factual record before the Court is not, however, sufficient for the Court to perform the required balancing test under the second prong of *Pickering*, to determine whether the Defendants' regulation of this speech violates the First Amendment.  *See Grutzmacher*, 851 F.3d at 345 (the Court next "consider[s] the context in which the speech was made, including the employee's role and the extent to which the speech impairs efficiency of the workplace." (quoting *Smith v. Gilchrist*, 749 F.3d 302, 309 (4th Cir. 2014))).  As the Defendants correctly observe, the amended complaint contains factual allegations to show that Plaintiff El-Haggan's use of the email signature was disruptive to the workplace.  ECF No. 42 at ¶ 53 (alleging that a staff member became upset when she read Plaintiff El-Haggan's signature block); *id.* at ¶ 55

(alleging that a staff member sent a screenshot of Plaintiff El-Haggan's signature line to supervisor and screenshot was circulated to head of school health services), *id.* at 61 (alleging that Principal Allrich received an email from a parent complaining about Plaintiff El-Haggan's clothing). These facts weigh in favor of the Defendants' ability to regulate this speech. But there are no facts before the Court regarding the other factors that the Court considers when conducting the *Pickering* balance, such as whether Plaintiff El-Haggan's speech impaired the maintenance of discipline by supervisors; damaged close personal relationships; impeded the performance of her duties; interfered with the operation of the school; undermined the mission of the school; and/or abused the authority and public accountability that her role entailed. *Grutzmacher*, 851 F.3d at 345.

Given this, the Court cannot conclude at this early stage in this litigation that Plaintiff El-Haggan's email signature had an adverse effect that was "reasonably to be apprehended." *Maciariello v. Sumner*, 973 F.2d 295, 300 (4th Cir. 1992) (quoting *Jurgensen v. Fairfax County*, 745 F.2d 868, 879 (4th Cir.1984)). And so, the Court declines to dismiss this claim. Fed. R. Civ. P. 12(b)(6).

For similar reasons, the Court declines to dismiss the First Amendment retaliation claims brought on behalf of Plaintiffs Robinson and Wolf in this case. The Plaintiffs are on much firmer footing in arguing that these two Plaintiffs engaged in speech as private citizens on matters of public concern. Notably, the Plaintiffs allege in the amended complaint that Plaintiffs Robinson and Wolf commented and posted about the war in Gaza on their personal social media accounts. ECF No. 42 at ¶¶ 109-112 and 173. And so, the amended complaint makes clear that these Plaintiffs did not engage in this speech pursuant to their duties as MCPS teachers. *See Garcetti*, 547 U.S. at 421 ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . .").

But, as is the case with Plaintiff El-Haggan, the factual record before the Court is not sufficient for the Court to determine whether the *Pickering* balancing factors support the Defendants' decision to regulate this speech. Again, there are some factual allegations in the amended complaint to show that the social media posts at issue were disruptive to the school. ECF No. 42 at ¶¶ 111-112 (acknowledging that parents contacted the school to complaint about Plaintiff Robinson's social media posts); *id.* at ¶ 173 (acknowledging that a parent contacted the

school to complaint about Plaintiff Wolf's social media posts). But other important facts are simply not currently before the Court, such as whether this speech impaired the maintenance of discipline by supervisors; impeded the performance of these Plaintiffs' duties; interfered with the operation of the school; undermined the mission of the school and/or abused the authority and/or the public accountability that these Plaintiffs' roles entailed.

Given this, the Defendants have not met their burden to show that the Plaintiffs cannot state plausible First Amendment retaliation claims based upon the social media posts of Plaintiffs Robinson and Wolf. And so, the Court also declines to dismiss these claims. Fed. R. Civ. P. 12(b)(6).

Because the Court reads the amended complaint to state plausible First Amendment retaliation claims, based upon Plaintiff El-Haggan's email signature and the social media posts of Plaintiffs Robinson and Wolf, the Defendants also have not shown that they are entitled to qualified immunity with regards to these claims. As discussed above, the Court agrees that there are facts in the amended complaint to show that the Plaintiffs' speech disrupted the school environment. But these facts are just one part of the particularized balance that the Court must employ to determine whether the speech at issue here is Constitutionally protected.[4] Given this, the Defendants have not shown at this stage in the litigation that the Plaintiffs cannot demonstrate a clearly established First Amendment right to support their First Amendment retaliation claims.

For each of these reasons, the Court DENIES the Defendants' motion to dismiss the Plaintiffs Section 1983/First Amendment retaliation claims based upon Plaintiff El-Haggan's email signature and the social media posts of Plaintiffs Robinson and Wolf.

**B. The MCBOE Is Entitled To Sovereign Immunity On The Plaintiff's Section 1983/First Amendment Retaliation Claims**

To the extent that the Plaintiffs state plausible Section 1983/First Amendment retaliation claims in the amended complaint, the Defendants persuasively argue that the MCBOE is entitled to sovereign immunity with regards to these claims. It is well-established that State agencies are entitled to sovereign immunity when the agency is an arm of the State. *See Regents of the Univ.*

---

[4] Because the factual record before the Court is not sufficient to perform the balance under *Pickering* to determine whether the Defendants' regulation of the Plaintiffs' speech was appropriate, the Defendants also have not shown that the Plaintiffs are unable to allege a constitutional injury.

*of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997).  Given this, Maryland courts have consistently held that County Boards of Education in Maryland are agencies of the State and, thus, entitled to sovereign immunity from Section 1983 claims.  *See Lewis*, 262 F. Supp. 2d at 614; *see also Bd. of Educ. of Prince George's Cnty. v. Prince George's Cnty. Educators' Ass'n,* 522 A.2d 931, 936 n. 3 (Md. App. Ct. 1987) ("County boards of education are, of course, state agencies and not agencies of the county government."); *Montgomery Cnty. Educ. Ass'n v. Bd. of Educ. of Montgomery Cnty.*, 534 A.2d 980, 987 (Md. App. Ct. 1987) (recognizing the local boards as state agencies); *Bd. of Educ. of Montgomery Cnty. v. Montgomery County.*, 205 A.2d 202, 205 (Md. App. Ct. 1964) (noting the local school boards are not a branch of the county government nor an agency under its control); *Doe #1 v. Montgomery Cnty. Bd. of Educ.*, No. CV 21-0356 PJM, 2021 WL 6072813 at *8 (D. Md. Dec. 23, 2021) (holding that the Montgomery County Board of Education is a state agency and entitled to sovereign immunity from Section 1983 claims.); *see also Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248 n. 5 (4th Cir. 2012) ("We agree with the courts that have evaluated the foregoing factors and concluded that the State exercises a significant degree of control over boards of education and Maryland law treats them as instrumentalities of the State.").

In this case, the Plaintiffs bring Section 1983/First Amendment retaliation claims against the MCBOE.  ECF No. 42 at ¶¶ 218-232.  Because the MCBOE is a State agency, it is entitled to sovereign immunity with regards to these claims.[5]  *Doe #1*, 2021 WL 6072813 at *8.  And so, the Court must also DISMISS the Plaintiffs' Section 1983/First Amendment retaliation claims against the MCBOE.

### C.  The Plaintiffs Fail To State Plausible Employment Discrimination Claims

Turning to the Plaintiffs' employment discrimination claims set forth in Counts II-V of the amended complaint, a careful reading of the amended complaint shows that these claims are not plausible.  As the Defendants persuasively argue, the Plaintiffs do not allege facts to show an adverse employment action to support these claims.

---

[5] Because Defendant Superintendent Thomas Taylor is being sued in his official capacity, he is also entitled to sovereign immunity with regards to the Plaintiffs' Section 1983/ First Amendment retaliation claims.  *See Lewis v. Bd. of Educ. of Talbot Cnty.*, 262 F. Supp. 2d 608, 612 (D. Md. 2003) ("[T]he law is clear that individuals sued in their official capacity as state agents cannot be held liable for damages or retrospective injunctive relief.").

To state a *prima facia* case of employment discrimination under Title VII and the MFEPA, the Plaintiffs must allege facts to show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190 (4th Cir. 2010), *aff'd sub nom.*, 566 U.S. 30 (2012). A careful reading of the amended complaint in this case shows that the Plaintiff do not allege facts to show an adverse employment action for several reasons.

First, the MCPS's decision to place Plaintiffs El-Haggan and Robinson on paid administrative leave during the course of the investigations into their conduct is not an adverse employment action. *See Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) (holding that "placing [an employee] on administrative leave with pay for a short time to allow investigation" is not an adverse action for retaliation purposes), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60 (2006). Second, while Plaintiff Robinson's recommended five-day suspension without pay would constitute an adverse employment action, there is no dispute that this sanction was not imposed on Plaintiff Robinson. ECF No. 45 at 30; ECF No. 42 at ¶ 152; ECF No. 46 at 20-21.

Third, the Plaintiffs do not allege facts to show that their transfers to the schools "adversely affected the terms, conditions, or benefits of their employment. *Holland*, 487 F.3d at 219 (citation omitted). In this regard, the Plaintiffs allege that their respective transfers increased their commute times, required additional work and were stressful. ECF No. 42 at ¶ 162 (alleging that Plaintiff Robinson's transfer caused an increased commute time and stress.); *id*. at ¶¶ 83, 91 and 95 (alleging that Plaintiff El Haggan was distraught about abandoning her students at Argyle Middle School, was required to prepare for five different subjects each day and spent own income to furnish her classroom); *id.* at ¶¶ 205, 207 and 208 (alleging that Plaintiff Wolf was transferred to a non-comparable position, suffered an increase to her commute time and lost the ability to use her English Language Development expertise). But the Fourth Circuit has held that an assignment or action which is merely "less appealing to the employee" does not meet the threshold for an adverse employment action. *Holland*, 487 F.3d at 219.

Plaintiff El-Haggan's loss of income related to her outside tutoring work is also not related to a term or condition of her employment with the MCPS. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024) ("To make out a Title VII discrimination claim, a transferee

must show some harm respecting an identifiable term or condition of employment."). Lastly, while the Plaintiffs allege that Plaintiff El-Haggan was denied other positions for which she applied, and that her transfer reduced her chances of obtaining a desired Outdoor Environment Education Program position, the Plaintiffs do not allege any facts to support these claims. ECF No. 42 at ¶¶ 99-100.

Given this, the Plaintiffs simply have not alleged facts to show that they suffered a harm regarding an identifiable term or condition of their employment with the MCPS. And so, the Court GRANTS the Defendants' motion to dismiss the Plaintiffs' employment discrimination claims set forth in Counts II-V of the amended complaint.[6]

### D. The Plaintiffs State A Plausible Claim For Injunctive Relief

As a final matter, the Defendants have not shown that dismissal of the Plaintiffs' claim for injunctive relief is warranted. While the Defendants correctly argue that injunctive relief is an extraordinary remedy that requires, among other things, a showing of irreparable harm, they have not established that the Plaintiffs will be unable to make such a showing in this case. ECF No. 45 at 28. And so, the Court declines to dismiss the Plaintiffs' claim for injunctive relief.

## V.    CONCLUSION

In sum, a careful reading of the amended complaint shows that the Plaintiff's Section 1983/First Amendment retaliation claim, based upon Plaintiff El-Haggan's wearing of pins, buttons and clothing in the classroom, is not plausible. But the amended complaint also makes clear that Plaintiff El-Haggan alleges a plausible First Amendment retaliation claim based upon her email signature and that Plaintiffs Robinson and Wolf also allege plausible First Amendment retaliation claims based upon their social media posts. The amended complaint also makes clear that the MCBOE is immune from suit with regards to the Plaintiffs' Section 1983/First Amendment claims.

In addition, a careful reading of the amended complaint shows that the Plaintiffs fail to state plausible disparate treatment claims under Title VII and the MFEPA, because they do not allege facts to show an adverse employment action. Lastly, the Plaintiffs allege plausible claims for injunctive relief at this early stage of the proceedings. And so, the Court:

---

[6] Because the Court concludes that the Plaintiffs fail to allege facts to show an adverse employment action, the Court does not address whether the Plaintiffs identify similarly situated comparators from outside their protected classes.

(1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendants' motion to dismiss (ECF No. 45);

(2) **DISMISSES** the Plaintiffs' Section 1983/First Amendment retaliation claim, based upon Plaintiff El-Haggan's wearing of pins, buttons and clothing in the classroom, set forth in Count I of the amended complaint;

(3) **DISMISSES** the Plaintiffs' Section 1983/First Amendment retaliation claims against the MCBOE; and

(4) **DISMISSES** the Plaintiffs' employment discrimination claims set forth in Counts II, III, IV and V of the amended complaint.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
